IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ELLIS GARRY JENERETTE              :

                                       :

   v.                              :     Civil Action No. DKC 09-1777

MONTGOMERY COUNTY                   :
GOVERNMENT
                                       :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment discrimination case is Defendant's motion to dismiss for failure to produce discovery, or in the alternative, for summary judgment (Paper 13). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendant's motion to dismiss will be denied and Defendant's motion for summary judgment will be granted.

**I.   Background**

   **A.   Factual Background**

The following facts are either uncontroverted or construed in the light most favorable to Plaintiff, the non-moving party. Plaintiff Ellis Jenerette has moderate persistent asthma, which he treats with daily medication. (Paper 13, Attach. 8, at 1-2). Plaintiff's asthma began in childhood but worsened after he moved to Maryland in 1989. (*Id. at 1*). Plaintiff began

employment with the Department of Corrections ("DOC") at the Montgomery County Correctional Facility on May 21, 2001. (Paper 13, at 3).

From the beginning of his employment, Plaintiff failed to maintain regular job attendance. (Paper 13, at 4). At Plaintiff's first job performance evaluation in May 2002, his attendance was rated as "marginal." (Paper 13, Attach. 1). In every subsequent performance evaluation from May 2003 until May 2007, Plaintiff was rated "Does not meet expectations" with respect to regular and punctual job attendance. (*Id.*). Plaintiff took 400 hours of sick leave and 130 hours of leave without pay in 2002 alone. (Paper 13, Attach. 2). He maintained a similar rate of absence for the next 4 years, missing work an average of 31% of the time from 2002 to 2006. (*Id.*).

On November 18, 2005, Plaintiff's health care provider, Dr. Edward Fisher, completed a Montgomery County Government Medical Certification Form indicating that Plaintiff's medical condition did not justify such extended absences. Dr. Fisher wrote that Plaintiff "has a chronic lung condition that may require him to miss two to three days of work per year due to flair [sic] ups." (Paper 13, Attach. 4). Dr. Fisher also noted that Plaintiff

suffered no incapacitation and it was not necessary for him to work intermittently or less than a full schedule. (*Id.*).

On January 10, 2007, Plaintiff was informed he had been placed on sick leave restriction, requiring him to provide documentation from a licensed doctor when granted sick leave. (Paper 13, Attach. 5). On May 17, 2007, Plaintiff was informed that, due to his continued use of sick leave, this requirement would be extended another six months and disciplinary action was being recommended. (Paper 13, Attach. 6). During Plaintiff's performance evaluation on May 21, 2007, Plaintiff's supervisor, Lieutenant Wade, reminded Plaintiff that his use of sick leave was an area of concern. (Paper 13, Attach. 7).

On August 1, 2007, Dr. Fisher completed a second Montgomery County Government Medical Certification Form affirming that Plaintiff's condition was not incapacitating but could require Plaintiff to miss one to two days per quarter. (Paper 13, Attach. 8). Plaintiff submitted this Form in support of a request that his leave for absences due to a chronic medical situation be designated as Family Medical Leave Act ("FMLA") leave. On August 24, 2007, Deputy Warden Gilliam granted Plaintiff's request, effective as of January 7, 2007. (Paper 13, Attach. 9). Plaintiff proceeded to use the maximum 12 weeks and 480 hours allowable under the statute.

3

On November 24, 2007, Plaintiff was informed that he had exhausted his FMLA leave, and Plaintiff then requested to be placed on sick leave. (Paper 13, Attach. 10). On December 1, 2007, Lieutenant A. Robertson warned Plaintiff that he had also exhausted his sick leave accruals and would be placed on Absence Without Leave (AWOL) status if he did not report for work. (*Id.*). Plaintiff had in fact been absent for 889.5 hours in 2007, an amount comprising nearly half of Plaintiff's required work hours. (Paper 13, Attach. 1). Despite the warning, Plaintiff subsequently failed to report to work. (Paper 13, Attach. *10*).

When Plaintiff did report to work on December 7, 2007, he was served with a Notice of Intent to Terminate from County Employment for violations of Montgomery County and DOC attendance regulations. (Paper 13, Attach. 11). Plaintiff submitted a rebuttal letter noting that he has a serious illness documented in his FMLA requests. (Paper 13, Attach. 14). Plaintiff also claimed that his absences were protected under the FMLA. (*Id.*).

Plaintiff received a Notice of Termination from County Employment on December 17, 2007. (Paper 13, Attach. 13). On December 26, 2007, Warden Robert Green informed Plaintiff that his rebuttal letter provided no information that would prevent

4

his termination. (Paper 13, Attach. 15). Plaintiff was terminated as of December 31, 2007. (*Id.*).

Municipal and County Government Employees Association, Local 1994 ("the Union") filed a grievance on Plaintiff's behalf with Warden Green, who rejected it on January 9, 2008. (Paper 13, Attach. 16). The Union appealed the decision to the Director of DOC and the Chief Administrative Officer of Montgomery County, both of whom denied the appeal. (Paper 13, Attach. 17; Paper 13, Attach. 18). After receiving those decisions, the Union decided not to proceed to arbitration on Plaintiff's behalf. (Paper 13, Attach. 19).

Plaintiff subsequently filed a charge of employment discrimination and wrongful termination with the Equal Employment Opportunity Commission ("EEOC") against Montgomery County Correctional Facility. (Paper 13, Attach. 1). The EEOC was unable to establish a violation and issued Plaintiff a notice of right to sue letter dated April 7, 2009. (Paper 13, Attach. 20).

**B.  Procedural Background**

Plaintiff filed a complaint in this court on July 6, 2009, alleging wrongful termination, harassment, hostile work environment and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. ("Title VII") and the

Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"). (Paper 1). Plaintiff also brought a claim of wrongful termination under the Family Medical Leave Act of 1993, 29 U.S.C. § 2601 *et. seq.* ("FMLA"). (*Id.*). Defendant answered his complaint on September 3, 2009, (Paper 5), and a Scheduling Order was issued on September 8, 2009. (Paper 6).

Defendant sent Interrogatories and a Request for Production of Documents to Plaintiff on November 24, 2009, requiring a response by December 28, 2009. (*Id.*). The deadline passed without any response by Plaintiff. On January 13, 2010, Defendant sent Plaintiff a letter, informing him that his responses were late and requesting their delivery. (Paper 13, Attach. 3). Discovery ended on January 19, 2009. (Paper 6). On January 27, 2010, Plaintiff filed a request to extend discovery. (Paper 12). This court denied Plaintiff's request on March 5, 2010. (Paper 17). On February 16, 2010, Defendant filed a motion to dismiss for failure to produce discovery or, in the alternative, for summary judgment. (Paper 13). That motion is now fully briefed.

**II. Motion to Dismiss**

Defendant has moved to dismiss Plaintiff's complaint pursuant to Fed.R.Civ.P. 37(d), or in the alternative for summary judgment pursuant to Fed.R.Civ.P. 56.

As discussed in *Camper v. Home Quality Management Inc.*, 200 F.R.D. 516, 517-19 (D.Md. 2000), Federal Rule of Civil Procedure 37(d) allows the court to sanction a party who "after being properly served with interrogatories under Rule 33 . . ., fails to serve its answers, objections, or written response." Defendant has requested the imposition of one of the most severe sanctions – dismissal of Plaintiff's action. *See* Fed.R.Civ.P. 37(b)(2)(A)(v).

While federal district courts have discretion to sanction parties for failing to obey discovery orders, this discretion diminishes when the requested relief involves a default judgment. *Camper*, 200 F.R.D. at 518. "When considering dismissal as a discovery sanction, courts apply a four part test, known as the 'Wilson factors': (1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice the noncompliance has caused the other party; (3) the need to deter the particular type of noncompliance; and (4) the effectiveness of less drastic sanctions." *Id*. This analysis is designed to "insure that only the most flagrant case, where the party's noncompliance represents bad faith and callous disregard for the authority of the district court and the Rules, will result in the extreme sanction of dismissal or judgment by default." *Id.* (citation omitted). The Fourth Circuit

7

additionally requires a district court to give a party fair warning prior to dismissing its claim as a discovery sanction. *Id.*

Plaintiff received no explicit warning that he faced dismissal if he did not respond to Defendant's discovery requests before the deadline. Notably, Defendant's letter to Plaintiff made no mention of sanctions and Defendant never requested a court order to compel Plaintiff's response. Dismissal for discovery violations is a severe sanction and will not be imposed in these circumstances. Defendant's motion on this ground will therefore be denied.

**III. Motion for Summary Judgment**

    **A.   Standard of Review**

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(f); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). In other words, if there clearly exists factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding*

*Co. LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *See Scott v. Harris*, 127 S.Ct. 1769, 1774 (2007); *Emmett,* 532 F.3d at 297. A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. *Celotex Corp.*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Id*. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 254; *Celotex Corp*., 477 U.S. at 324. "A mere scintilla of proof, however, will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249-50. (citations omitted).

**B. Analysis**

The claims asserted in Plaintiff's complaint include: (1) Title VII violations; (2) ADA violations; and (3) FMLA violations.

**1. Title VII claim**

Title VII prohibits discrimination on the basis of a party's race, color, religion, sex, or national origin. 42 U.S.C.A. 2000e-2; *Haavistola v. Cmty. Fire Co. of Rising Sun, Inc.*, 6 F.3d 211, 221 (4th Cir. 1993) ("[I]n enacting Title VII, Congress sought to eliminate a pervasive, objectionable history of denying or limiting one's livelihood simply because of one's race, color, sex, religion or national origin."). Plaintiff has not alleged that he was discriminated against on the basis of his race, color, sex, religion, or national origin. Therefore, Defendant is entitled to summary judgment on Plaintiff's Title VII claim.

**2. Americans with Disabilities Act claims**

Plaintiff has asserted three claims under the ADA: (1) wrongful termination; (2) hostile work environment; and (3) retaliation.

The ADA prohibits employers from "discriminat[ing] against a qualified individual with a disability because of the disability of such an individual in regard to job application

procedures, the hiring, advancement, or discharge of employees . . . ." 42 U.S.C. § 12112(a). In order to state a discrimination claim under the ADA, Plaintiff must allege that he is an individual with a disability within the meaning of the ADA. *See* 42 U.S.C. § 12112(a)(1995). The ADA defines "disability" as meeting one of three prongs: 1) having an actual mental or physical impairment that substantially limits one or more of the major life activities of an individual; 2) having a record of such an impairment; or 3) being regarded as having such an impairment. *Id.* § 12102(2). Plaintiff's claim, as alleged, falls within the first prong -- that is, he claims to have an actual impairment that substantially limits a major life activity.

Pursuant to Equal Employment Opportunity Commission ("EEOC") regulations, the term "major life activities" means "functions such as caring for oneself, performing manual tasks, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(i)(2003). "Courts have recognized that asthma is a physical impairment that affects the respiratory system." *Mayers v. Washington Adventis Hospital*, 131 F.Supp.2d 743, 749 (D.Md. 2001), *aff'd*, 22 Fed. Appx. 158 (4th Cir. 2001). Thus, Plaintiff's asthma qualifies as a physical impairment to his major life activity of breathing. These facts alone, however,

11

are insufficient to establish a disability under the ADA. *Id.* Plaintiff must still establish that his ability to breathe is "substantially limited."

The EEOC regulations define the phrase "substantially limit[ed]" as meaning "[u]nable to perform a major life activity that the average person in the general population can perform"; or "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j).

It is undisputed that on occasion Plaintiff's asthma intensifies, making breathing so difficult that Plaintiff is unable to work. Plaintiff's own doctor, however, estimated that this condition might occur "two to three days per year," (Paper 13, Attach. 4), or "one to two times per quarter," (Paper 13, Attach. 8). Plaintiff's doctor also specifically noted that Plaintiff's condition is not incapacitating and Plaintiff does not need to alter his work schedule in any way. (Paper 13, Attach. 4; Paper 13, Attach. 8). Plaintiff has produced no evidence contradicting his doctor's assertions. Because Plaintiff has not shown that he was substantially limited in a

major life activity, he does not qualify as actually disabled under the ADA.

Plaintiff asserted claims of harassment and hostile work environment under the ADA. For harassment to be actionable under the ADA, it must be sufficiently severe to alter a term, condition, or privilege of employment. *See Fox v. General Motors Corp.*, 247 F.3d 169, 175-77 (4th Cir. 2001). Such harassment is incorporated in the definition of hostile work environment, so Plaintiff's claims will be treated as a single claim of hostile work environment.

"[A]n ADA plaintiff must prove the following to establish a hostile work environment claim: (1) he is a qualified individual with a disability; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) some factual basis exists to impute liability for the harassment to the employer." *Id.* at 177. As Plaintiff is not considered disabled under the ADA, his claim of hostile work environment will be denied.

Plaintiff may bring a claim of retaliation against Defendant even though he cannot prove he is disabled under the ADA. *Parkinson v. Anne Arundel Medical Center, Inc.*, 214

F.Supp.2d 511, 517 (D.Md. 2002), *aff'd*, 79 Fed. Appx. 602 (4th Cir. 2003), *cert. dismissed*, 541 U.S. 1059 (2004). The ADA provides that "[n]o person shall discriminate against any *individual* because such individual has opposed any act or practice made unlawful by this chapter . . . ." 42 U.S.C. § 12203(a)(emphasis added). Recovery under this provision of the ADA does not require that the person invoking it be disabled. *See Rhoads v. Fed. Deposit Ins. Corp.*, 257 F.3d 373, 391 (4th Cir. 2001), *cert. denied*, 535 U.S. 933 (2002).

To prevail on a claim for retaliation, Plaintiff "must either offer sufficient direct and indirect evidence of retaliation, or proceed under a burden-shifting method." *Id*. Sufficient evidence of retaliation must consist of "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Id*. at 391-92.

Plaintiff included no evidence with his complaint that supported his retaliation claim, so the analysis must continue under the burden-shifting method.

Under the burden-shifting method, Plaintiff must first establish a prima facie case by showing that: (1) he engaged in protected activity; (2) his employer took adverse action against him; and (3) there is a causal connection between the protected

14

activity and the asserted adverse action. *Id.* at 392. The employer then must rebut the presumption of retaliation by offering a "legitimate nonretaliatory reason for its actions." *Id.* at 392. If the employer provides such a reason, the plaintiff "must demonstrate that the proffered reason is a pretext for forbidden retaliation." *Id.* "The plaintiff always bears the ultimate burden of persuading the trier of fact that [he] was the victim of retaliation." *Id*.

As discussed below, Plaintiff cannot establish a prima facie case of retaliation. Plaintiff alleged "Retaliation for Filing a Discrimination Complaint," but provided no additional information. A review of the record finds only a statement from the EEOC informing Plaintiff that "[w]ith regard to your retaliation claim, there is no evidence to establish a causal connection between grievances you filed in 2004 and 2005 and your discharge almost two years later on December 21, 2007." (Paper 13, Attach. 1). Assuming Plaintiff's retaliation claim does indeed refer to these grievances and his termination in 2007, Plaintiff can satisfy the first two requirements of the prima facie case. But, as suggested by the EEOC, the lapse of two years between Plaintiff's filing and his termination "does not support an inference of causation." *Parkinson*, 214 F.Supp.2d at 518. In the absence of additional evidence,

15

Plaintiff cannot show a causal connection between the protected activity and his subsequent termination. Plaintiff's claim of retaliation will therefore be denied.

### 3. Family Medical Leave Act claim

The FMLA provides that an eligible employee is entitled to twelve (12) weeks of leave per year for a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D) (2006). The FMLA also prohibits employers from discharging employees in retaliation for taking FMLA leave. *Jordan v. Radiology Imaging Associates*, 577 F.Supp.2d 771, 786 (D.Md. 2008)(citing 29 U.S.C. § 2615(a)(2)).

As discussed in *Jordan*, a wrongful termination claim is treated as a claim of retaliation under the FMLA. *Id*. "Absent direct evidence, FMLA retaliation claims are analyzed under the *McDonnell Douglas* burden-shifting framework." *Id*. To prove a prima facie case, a plaintiff must show "(1) that [he] engaged in protected activity, (2) that the employer took adverse action, and (3) that the adverse action was causally connected to the plaintiff's protected activity." *Id.*

> 'Temporal proximity' between the 'absence and the elimination of [the] job ... satisfies the less onerous burden of making a prima facie case of causality' even if it does not conclusively establish the causal connection. If an employee establishes a

16

>     prima facie case of retaliation, then the
>     employer must provide a 'non-discriminatory
>     explanation for the termination.'

*Id.* (quoting *Yahenko v. Harrah's NC Casino Co.,* 446 F.3d 541, 550-51 (4th Cir. 2006)). If the employer does so, then the employee must prove that "the employer's proffered explanation is a pretext for FMLA retaliation." *Id.*

In this case, the record shows that (1) Plaintiff took leave, (2) he suffered an adverse employment action, i.e. termination, and (3) the adverse employment action took place soon after his taking leave. Plaintiff has therefore established a prima facie case. *See Id.*

Defendant, however, has offered extensive evidence to demonstrate that Plaintiff's dismissal was due to excessive absence. As a condition of employment, Montgomery County Personnel Regulations require all County employees to maintain "regular and functional attendance at work." (Paper 13, Attach. 2). Yet each of Plaintiff's performance evaluations, beginning in 2002, noted attendance as an area of concern. (Paper 13, Attach. 1). In fact, in the two years prior to his dismissal, Plaintiff missed almost half of his scheduled time from work. (Paper 13, at 9). In 2007, Plaintiff was placed on sick leave restriction and warned of possible disciplinary action. (Paper 13, Attach. 6). After Plaintiff exhausted all FMLA leave and

17

sick leave, Plaintiff was warned that he would be considered AWOL if he did not report to work. (Paper 13, Attach. 10). Only after Plaintiff disregarded this last warning was he dismissed. In light of the warning he received and the duration of the problem, Plaintiff's excessive absence constitutes a legitimate justification for his dismissal.

As Plaintiff has failed to provide any evidence that Defendant's justification is pretextual, Defendant is entitled to summary judgment on this claim.

**IV. Conclusion**

For the foregoing reasons, Defendant's motion to dismiss as a discovery sanction will be denied, but the motion for summary judgment will be granted. A separate Order will follow.

                                    /s/
                          DEBORAH K. CHASANOW
                          United States District Judge